UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 14-71797-PWB |
| | : | |
| HP/SUPERIOR, INC., | : | CHAPTER 7 |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| S. GREGORY HAYS, Chapter 7 Trustee | : | |
| For the HP/SUPERIOR, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | ADV. PROCEEDING |
| | : | NO. _____ |
| DEPARTMENT OF TREASURY – | : | |
| INTERNAL REVENUE SERVICE, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COMPLAINT**

COMES NOW S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate

(the "**Bankruptcy Estate**") of HP/Superior, Inc. ("**Debtor**"), by and through undersigned counsel,

and files this *Complaint* against the Department of the Treasury – Internal Revenue Service (the

"**IRS**"), and respectfully shows the Court as follows:

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157

and 11 U.S.C. §§ 551 and 724(a).

2.      This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157

(b)(2).

3.      Venue is proper in this Court under 28 U.S.C. § 1409 because this adversary

proceeding arises in the Chapter 7 bankruptcy case of Debtor, Case No. 14-71797-PWB (the

"**Bankruptcy Case**"), pending in the Northern District of Georgia, Atlanta Division.

4.        Pursuant to Rule 7004, the IRS may be served by first claim mail, addressed as

follows:

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

United States Attorney
Attention: Civil Process Clerk
Northern District of Georgia
75 Ted Turner Drive SW, Suite 600
Atlanta, Georgia 30303-3309

5.        Trustee consents to the entry of final orders or judgment by the Bankruptcy Court.

**Statement of Facts**

*a. General Background*

6.        Debtor filed a voluntary petition (the "**Petition**") under Chapter 11 of Title 11 of

the United States Code on November 3, 2014 (the "**Petition Date**") and initiated the Bankruptcy

Case.

7.        On November 17, 2015, the Bankruptcy Court entered an order [Doc. No. 168;

Case No. 14-71797-PWB] converting the Bankruptcy Case from one under Chapter 11 to one

under Chapter 7 of the Bankruptcy Code effective as of November 4, 2015.

8.        On November 23, 2015, the United States Trustee appointed Trustee as the

Chapter 7 Trustee in the Bankruptcy Case.  [Doc. No. 170; Case No. 14-71797-PWB].  Having

conducted and concluded the Section 341 meeting of creditors in the Case on January 12, 2016,

Trustee is now the permanent Chapter 7 Trustee in the Bankruptcy Case.

### b. The Medicaid Funds

9.      On December 4, 2014, Debtor filed its *Schedule B - Personal Property* and

scheduled its interest in "Wisconsin Medicaid reimbursements" with a value of $3,002,025.00.

[Doc. No. 35, Page 22 of 63; Case No. 14-71797-PWB].

10.     On February 25, 2016, the State of Wisconsin turned over to Trustee

$2,851,208.68 from Medicaid reimbursements (the "**Medicaid Funds**") that the State of

Wisconsin had been withholding from Debtor because Debtor had not paid bed tax assessments

(the "**Bed Tax**") prior to and after the Petition Date.

11.     Upon information and belief, the amount of Medicaid Funds that Trustee received

from the State of Wisconsin was less than the scheduled amount because of normal course of

business reductions.

12.     The Medicaid Funds included $2,588,315.68 that accrued prior to the Petition

Date, and $262,893.00 that accrued after the Petition Date (the "**Post-Petition Medicaid**

**Funds**").

### c. The Secured Claim of CSE Mortgage, LLC, the Settlement, and the Carve-out

13.     After Trustee's appointment as Chapter 7 Trustee, CSE Mortgage, LLC ("**CSE**

**Mortgage**") asserted that it had a first priority security interest in all personal and real property

interests of Debtor as a result of, among other things, a certain cross-default agreement (the

"**Cross-Default Agreement**") signed on or about March 30, 2007 by, among other parties,

Debtor, CSE Mortgage, and Superior Healthcare Investors, Inc. ("**SHI**").  SHI and Debtor are

affiliates, and their bankruptcy cases were previously jointly administered.

14.    Trustee vigorously contested that the Cross-Default Agreement granted CSE Mortgage a security interest in property of the Bankruptcy Estate. The dispute over the extent, validity, and priority of the security interest purportedly granted by the Cross-Default Agreement, if any, is hereinafter referred to as the "**CSE Cross-Default Issue**."

15.    On June 17, 2016, Trustee filed a settlement motion [Doc. No. 201; Case No. 14-71797-PWB] (the "**CSE Settlement Motion**") in the Bankruptcy Case seeking, among other things, an order from the Court approving a settlement agreement (the "**CSE Settlement Agreement**") between Trustee and CSE Mortgage, among others, through which CSE and Trustee resolved the CSE Cross-Default Issue, as follows: (a) CSE Mortgage would have a first priority security interest in the Medicaid Funds and other assets in the amount of $755,677.20; (b) the Bankruptcy Estate would have a $187,089.03 carve-out from the CSE First Priority Security Interest; and (c) Trustee would pay $559,889.50 in satisfaction of the CSE First Priority Security Interest.

16.    On July 19, 2016, the Court entered an order [Doc. No. 209] approving the CSE Settlement Motion, and through which, among other things: (a) it was found and determined that CSE Mortgage held a first priority security interest in the assets of the Bankruptcy Estate, including the Medicaid Funds,  in the amount of $755,677.20 (the "**CSE First Priority Security Interest**"); (b) Trustee was authorized to pay $559,889.50 to CSE Mortgage (the "**CSE Secured Claim Payment**") on account of the CSE First Priority Security Interest; and (c) CSE Mortgage granted the Bankruptcy Estate a carve-out from the CSE First Priority Security Interest in the amount of $187,089.03 (the "**CSE Carve-Out**").

17.    Trustee has made the CSE Secured Claim Payment and is holding the Carve-Out to be distributed under Section 726 of the Bankruptcy Code, and the CSE First Priority Security

Interest has been satisfied, less and except the CSE Carve-Out, in accordance with the terms of the CSE Settlement Agreement.

### d. The Second Position Secured Claim of Omnicare, Inc. and the Settlement

18.    On December 8, 2014, Omnicare, Inc. ("**Ominicare**") filed a proof of claim [Claim No. 4-1; Case No. 14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $5,687,440.60 (the "**Omnicare Claim**").

19.    On March 31, 2015, Omnicare filed a second proof of claim [Claim No. 18-1; Case No. 14-71797-PWB] in the Bankruptcy Case asserting a secured claim in the amount of $6,794,531.56 (the "**Amended Omnicare Claim**").  Although it appears that the Clerk of Court for the Bankruptcy Court inadvertently entered the Amended Omnicare Claim in the claim registry for the Bankruptcy Case with a claim number [Claim No. 18-1; Case No. 14-71797-PWB] that is separate and apart from the claim number of the Omnicare Claim [Claim No. 4-1; Case No. 14-71797-PWB], the Amended Omnicare Claim was meant as, and is, an amendment to the Omnicare Claim.

20.    Omnicare asserted that the basis for its purported secured claim is: (a) a security agreement (the "**Omnicare Security Agreement**") entered into by Debtor, Omnicare, and affiliates of Debtor and/or Omnicare on or about November 16, 2010 to, among other things, secure an unpaid obligation of the Debtor arising from services rendered by Omnicare to Debtor in the original amount of $312,387.57; and (b) a judgment entered on or about January 22, 2014, in favor of Omnicare and several of its affiliates or subsidiaries (collectively, the "**Plaintiffs**") and against Debtor and several of Debtor's affiliates by the United States District Court, Northern District of Georgia, Atlanta Division in the matter styled as *Williamson Drug*

*Company, et al. v. HP/Cambridge House, Inc., et al.* (Civil Action File No. 1:12-CV-4017-TWT) (the "**Judgment**").

21.    On January 6, 2011, Omnicare, along with the other Plaintiffs, filed a UCC-1 to perfect its security interest granted by the Security Agreement in the property of Debtor and Debtor's affiliates.

22.    Debtor and several of its affiliates were obligated to the Plaintiffs, jointly and severally, as a result of the Judgment.

23.    Omnicare contended that the Amended Omnicare Claim was secured in and against all property of the Bankruptcy Estate, including the Medicaid Funds, and that it was thus entitled to the entirety of the Medicaid Funds ("**Omnicare's Contention**").

24.    The other Plaintiffs (other than Omnicare) also contended that, even though they had not filed a claim in Debtor's Bankruptcy Case, they had a lien against all property of the Bankruptcy Estate, including the Medicaid Funds, as a result of the entry of the Judgment (the "**Plaintiffs' Contention**" and, collectively with Omnicare's Contention, the "**Contentions**").

25.    These alleged secured interests and liens of Omnicare and the other Plaintiffs would have been in second priority behind the interest of CSE Mortgage had Trustee not made the CSE Secured Claim Payment.

26.    Trustee vigorously contested the Contentions and asserted that the Omnicare Claim was secured only to the extent of the consensual lien (the "**Consensual Lien**") arising from the Omnicare Security Agreement and that any lien arising from the Judgment did not attach to any property of the Bankruptcy Estate, including the Medicaid Funds.

15054197v1

27.     As of September 11, 2016, the balance of the obligation secured by the Consensual Lien arising from the Omnicare Security Agreement was $615,670.86, plus per diem interest of $150.81.

28.     On October 7, 2016, Trustee filed a second settlement motion [Doc. No. 214] (the "**Omnicare Settlement Motion**") seeking approval of a settlement agreement between Trustee, on the one hand, and the Plaintiffs, on the other hand (the "**Omnicare Settlement Agreement**").

29.     On November 7, 2016, the Bankruptcy Court entered an order [Doc. No. 232] (the "**Omnicare Settlement Order**"), approving the Omnicare Settlement Motion and Omnicare Settlement Agreement, through which, among other things: (a) it was found and determined that Omnicare held a first priority security interest in the assets of the Bankruptcy Estate, including the Medicaid Funds, in the amount of $615,670.86 (the "**Omnicare First Priority Security Interest**"); (b) Trustee agreed to pay $615,670.86 to Omnicare (the "**Omnicare Secured Claim Payment**") on account of the Omnicare First Priority Security Interest; and (c) the Plaintiffs agreed that no lien from the Judgment was ever attached to any property of the Bankruptcy Estate, including the Medicaid Funds.

30.     Trustee has made the Omnicare Secured Claim Payment and the Omnicare First Priority Security Interest has been satisfied, in accordance with the terms of the Omnicare Settlement Agreement.

### e. Summary of the Results of the CSE Settlement Agreement and the Omnicare Settlement Agreement

31.     As a result of the recovery of the Medicaid Funds and other recoveries in this Bankruptcy Case, including additional recoveries resulting from the CSE Settlement Agreement, there were $2,660,162.48 in the Bankruptcy Estate to which the security interests of CSE Mortgage and Omnicare could attach (the "**Encumbered Funds**").

15054197v1

32.      This $2,660,162.48 in Encumbered Funds does not include the $262,893.00 in Post-Petition Medicaid Funds because the Post-Petition Medicaid Funds were generated by Debtor after the Petition Date.

33.      Following Trustee's making the CSE Secured Claim Payment, the CSE Carve-out, and Trustee's making the Omnicare Secured Claim Payment, there is currently $1,297,513.09 remaining from the Encumbered Funds in the Bankruptcy Estate to which junior liens may attach (the "**Remaining Encumbered Funds**").

### *f. The State of Wisconsin Proof of Claim and Third Position Lien*

34.      On September 25, 2015, the State of Wisconsin, DWD – UI (the "**State of Wisconsin**") filed amended Claim No. 15-2 in the amount of $396,161.56 with $361,174.48 claimed as secured (the "**Wisconsin Proof of Claim**").  [Claim No. 15-2, Case No. 14-71797-PWB].

35.      Based on documentation attached to the Wisconsin Proof of Claim, and based upon information and belief, the State of Wisconsin has a first position lien against the Remaining Encumbered Funds in the amount of $48,944.38 as a result of tax warrant #11UC61 docketed in Douglas County, Wisconsin on August 15, 2011.

36.      This alleged lien of the State of Wisconsin would have been in third priority behind the interest of CSE Mortgage and Omnicare had Trustee not made the CSE Secured Claim Payment and the Omnicare Secured Claim Payment.

### *f. The IRS Proof of Claim and Fourth Position Lien*

37.      On April 13, 2015, the IRS filed Claim No. 1-4 (the "**First IRS Proof of Claim**") in the amount of $3,608,542.86 with $1,957,835.17 claimed as secured by "All of debtor(s) right, title and interest to property." [Claim No. 1-4, Case No. 14-71797-PWB].

38.     Based on documentation attached to the First IRS Proof of Claim, and based upon information and belief, the IRS has a second position lien against the Remaining Encumbered Funds in the amount of $1,248,568.71 (the "**IRS Secured Claim Amount**") as a result of notices of tax liens filed in Fulton County, Forsyth County, and Douglas County, Georgia on October 21, 2011.

39.     Of this IRS Secured Claim Amount, $1,025,706.24 arises from taxes and interest, and the remaining $222,862.47 is based on penalties.

## COUNT I

### Request to Establish Validity, Extent, and Priority of IRS Tax Lien in Post-Petition Medicaid Funds

40.     Trustee realleges the allegations of paragraphs 1 through 39 above as though fully set forth herein.

41.     The validity, extent, and priority of the IRS's security interest in the Post-Petition Medicaid Funds has not been conclusively established, and it is necessary to do so to determine the extent of the IRS's interest in and entitlement to payment from the Post-Petition Medicaid Funds.

42.     The IRS has no lien against the Post-Petition Medicaid Funds because they were generated by Debtor after the Petition Date.

43.     Trustee requests an order and judgment finding that the IRS has no interest or lien in the Bankruptcy Estate's interest in the Post-Petition Medicaid Funds.

## COUNT II

### Claim to Avoid Tax Lien of IRS that Secures Tax Penalty, under 11 U.S.C. § 724(a)

44.     Trustee realleges the allegations of paragraphs 1 through 43 above as though fully

set forth herein.

45.    Alternatively, the Remaining Encumbered Funds includes the Post-Petition Medicaid Funds, and, as a result, the IRS has a second position lien against the Remaining Encumbered Funds in the total amount of $1,511,461.71.  Of this secured claim in the amount of $1,511,461.71, $1,025,706.24 arises from taxes and interest, and the remaining $485,755.47 is based on penalties.

46.    A portion of the IRS Secured Claim Amount is a lien that secures a claim that is a penalty that is not compensation for an actual pecuniary loss suffered by the IRS (the "**Tax Penalty Lien**").

47.    Trustee is entitled to avoid the Tax Penalty Lien, and any interest on such avoided Tax Penalty Lien, under 11 U.S.C. § 724(a).

## COUNT III

### Claim for Preservation of Avoided Tax Penalty Lien, under 11 U.S.C. § 551

48.    Trustee realleges the allegations of paragraphs 1 through 47 above as though fully set forth herein.

49.    The avoided Tax Penalty Lien, and any interest that has accrued thereon, is preserved automatically for the benefit of the Bankruptcy Estate under 11 U.S.C. § 551.

WHEREFORE, Trustee prays that this Court enter a judgment in favor of Trustee and against the IRS:

a) Establishing that the IRS has no interest or lien in the Post-Petition Medicaid Funds;

b) Avoiding the Tax Penalty Lien, and any interest on such avoided Tax Penalty Lien, under 11 U.S.C. § 724(a);

c) Preserving the avoided Tax Penalty Lien, and any interest that has accrued thereon, for

the benefit of the Bankruptcy Estate under 11 U.S.C. § 551; and

d)  Granting such other and further relief as is just and proper.

Respectfully submitted this 5th day of May, 2021.

> ARNALL GOLDEN GREGORY LLP
> *Attorneys for Trustee*
>
> By: */s/ Michael J. Bargar*
>     Michael J. Bargar
>     Georgia Bar No. 645709
>     michael.bargar@agg.com

171 17th Street, NW
Suite 2100
Atlanta, GA 30363
(404) 873-8500 (Telephone)
(404) 873-8501 (Facsimile)

15054197v1